**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____
                                   :
JAMES COTTER and WILSON LAND       :
REALTY, LLC,                       :
                                   :
            Plaintiffs,            :    Civil Action No. 09-2347 (JAG)
                                   :
       v.                          :    **OPINION**
                                   :
NEWARK HOUSING AUTHORITY,          :
                                   :
            Defendant.             :
_____:

**GREENAWAY, JR., U.S.C.J.**[1]

    This matter comes before this Court on a motion to dismiss for failure to state a claim, by Defendant, Newark Housing Authority, ("Defendant"), against Plaintiffs, James Cotter and Wilson Land Realty, LLC, (collectively, "Plaintiffs"), pursuant to FED. R. CIV. P. 12(b)(6) and L. CIV. R. 7.1. For the following reasons, Defendant's motion to dismiss is granted.

**I.   BACKGROUND**

    According to the Complaint, by letter to Plaintiffs' counsel, dated January 10, 2001, Defendant stated that Defendant would

> sell up to twenty-two ... acres ("the Lots") to Cotter. We request that Cotter give us an offer to purchase. The final price will have to be approved by a reuse appraisal performed by appraisers retained by [Defendant] pursuant to the requirements of the HUD Urban Renewal Disposition Guidelines.

Compl. ¶ 19.

_____
[1] Sitting by designation on the District Court.

1

> On March 15, 2001, Defendant sent Plaintiffs another letter stating,
>
> [Defendant] is willing to convey the 22 acres to your client which is located on the northern end of the property in question for the total price of $2,486,000. The property will be conveyed 'as is' as a cash sale. We will give you a reasonable time period to conduct your due diligence with respect to this land. [Defendant] will not be amenable to a reduction in the purchase price based on the investigation. Your client must commit to the construction of a 40,000 square foot building within two years of the date of closing. It must execute the standard HUD Disposition Agreement applicable to urban renewal land.

Compl. ¶ 20.

> The same letter also stated,
>
> So as not to interfere with the attempted resolution of the dispute between Mr. DeVino and Mr. Cotte, we propose that you obtain a release from Industrial Land Urban Renewal Corp. of its right of first refusal with respect to the land which you are acquiring. Further, we request that the land currently leased to T. Fiore be released from the 'right of first' refusal.' You will agree to the modification of the easements across the land which we convey to ILUR to reflect the desires of Mr. DeVino in this regard.

Compl. ¶ 22.

> On June 1, 2001, Plaintiffs responded to Defendant, stating,
>
> I have put in one paper the agreement that has been reached between our clients which provides a follows:
>
> > 1. Cotter will have right to enter the property for testing and surveying (but not to occupy) for a period of time not to exceed six (6) months.
> >
> > 2. Cotter will purchase all the remaining 22 acres upon the following terms and conditions:
> >
> > > a) purchase price of $113,000 per acre
> > > b) 15% down payment
> > > c) NHA will hold 10 year self-liquidating mortgage at Prime plus 1%. Interest will be adjusted on each annual anniversary. Cotter shall execute a mortgage, note and assignment of rents.
> >
> > 3. Cotter, DeVino, and ILUR will waive any right to the remaining 8 acres

      of the Back 30 acres.

Compl. ¶ 23.

      On June 4, 2001, Defendant wrote to Plaintiffs stating that "[s]ubject to final approval of the Authority's Board of Commissioners, Defendants will enter into a contract with Cotter to sell 22 acres of land ... As a condition to this agreement, DeVino and Industrial Land Urban Renewal ... Cotter, DeVino and ILUR will wave [sic] their rights of first refusal ...".  Compl. ¶ 24.

      On February 26, 2004, Defendant passed resolution 402-26-17 ("the 2/26 Resolution") which authorized Defendant to enter into a disposition agreement to convey the Lots to Plaintiffs. Compl. ¶ 31.

      On March 17, 2004, Defendant confirmed, to Plaintiffs, the passage of the 2/26 resolution, stating,

> The Newark Housing Authority Board of Commissioners has approved the above referenced sale ...  Furthermore, we had previously negotiated an agreement ... whereby [Defendant] would convey the subject land ... for a price of $2,490,000 ... At this time, [Defendant] is requiring that if your client has a continued interest in this property, it must close on it before May 1, 2004.  Please advise me before the close of business on April 15, 2004 if your client desires to acquire this property in its current condition based upon the terms and conditions of our proposed agreement.  Also, attached for your client's signing is the contract for said property.  We are making this matter a time of the essence closing effective May 1, 2004.  If we do not hear from you by April 15, 2004 of your intentions to close, we will assume that Mr. Cotter has no further interest in this property.

Compl. ¶ 32.

      On April 13, 2004, Plaintiffs' counsel responded,

> My client will of course be ready to close May 1, 2004 as he was ready to close February 1, 2004 pursuant to the NHA resolution.  However, the contract as I mentioned in our last conversation, is NOT reflective of the resolution.  I have made the requisite changes and enclose a copy.  Please review and advise.

3

Compl. ¶ 34.[2]

Plaintiff concedes that Defendant never executed the amended form contract (the "form contract"), but claims that the parties "continued to proceed to consummate [Plaintiffs'] acquisition." Compl. ¶ 35.

On January 10, 2005, Plaintiffs wrote to Defendant with "a list of items that needed to be resolved to clean the title issues and schedule the closing." Compl. ¶ 36.

According to Plaintiffs, the list of items was not resolved by Defendant. Compl. ¶¶ 37-39, 42. Plaintiffs also claim that they have spent approximately $200,000 preparing for the closing on the sale of the Lots. Compl. ¶ 41.

Plaintiffs concede that the parties never entered into a formal contract regarding the sale of the Lots. Compl. ¶ 43. Instead, Plaintiffs claim that they relied on a court ordered Stipulation of Settlement, the 2/26 resolution, and other promises and actions of Defendant. Compl. ¶ 43. On June 25, 2008, Plaintiffs requested a meeting with Defendant to discuss proceeding to closing. Compl. ¶ 44. Defendant referred Plaintiffs to Defendant's outside counsel. Compl. ¶ 44. Plaintiffs allege that they have been unable to contact Defendant's outside counsel. Compl. ¶44.

As a result, Plaintiffs filed a Complaint in this matter in the United States District Court for the District of New Jersey, on May 15, 2009. In the Complaint, Plaintiffs allege causes of

---

[2]Plaintiffs supplied the Court with a copy of this correspondence. In their submissions, however, Plaintiffs failed to include the contract to which Plaintiffs stated they made the "requisite changes." Fortunately, Defendant supplied this Court with a copy of that edited and unsigned contract. See Exhibit A to the Certification of Joseph Maddaloni. Neither Plaintiffs' nor Defendant's signature appears anywhere on the document. Strikethrough marks appear on pages 6-7 along with the word "omit".

action for: (I) breach of contract, (II) specific performance, (III) promissory estoppel, and (IV) equitable estoppel. Compl. ¶¶ 45-63.

This Court has diversity jurisdiction over this action, pursuant to 28 U.S.C. § 1332(a); there is true diversity of citizenship between the parties[3], and the amount in controversy exceeds $75,000.

On June 22, 2009, Defendant moved to dismiss the Complaint, for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6) and L. CIV. R. 7.1.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to dismiss a claim for relief in any pleading for failure to state a claim upon which relief can be granted.

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). "When there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009); see also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994) (a court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party). The question is whether the

---

[3] Plaintiff James Cotter, a New York citizen, is the sole member of Plaintiff Wilson Land Realty, LLC, a New Jersey limited liability company. The citizenship of a limited liability company (LLC) is determined by the citizenship of each of its members for purposes of diversity jurisdiction. 28 U.S.C. § 1332(a). Thus, Plaintiffs are New York citizens. Defendant Newark Housing Authority is a public body corporate of the State of New Jersey.

claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000). A motion to dismiss for failure to state a claim should be granted only if the party asserting the claim is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

However, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 129 S. Ct. at 1950. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. A court will not accept as true bald assertions, unsupported inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997).

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which [their] claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to

6

dismiss] into one for summary judgment.'" Id. (emphasis in original) (quoting Shaw v Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment. FED. R. CIV. P. 12(d).[4]

"The defendant bears the burden of showing that no claim has been presented." Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

### III.    BREACH OF CONTRACT and SPECIFIC PERFORMANCE

Defendant has moved to dismiss Plaintiffs' claims for breach of contract and specific performance (Counts I & II). To plead a cause of action sounding in breach of contract, a plaintiff must allege, (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007) (interpreting New Jersey law, and citing Video Pipeline, Inc. v. Buena Vista Home Entertainment, Inc., 210 F. Supp. 2d 552, 561 (D.N.J. 2002)).

New Jersey historically has required that a sale of an interest in land be in writing. Morton v. 4 Orchard Land Trust, 849 A.2d 164, 168 (N.J. 2004). Today, where "parties have engaged in a series of 'handshake' agreements ... and have honored them in the absence of any writing, their proper conduct *could* tend to show that they intended to enter into a binding agreement." Id. at 169 (emphasis added). In that case, a writing will not be required to show the existence of a valid contract. Where, however, the parties intend to be bound only by a written

---

[4] The documents mentioned *infra* are integral to, and explicitly relied upon, in the Complaint. This Court shall consider those documents without converting Defendant's motion to dismiss into a motion for summary judgment.

contract, oral discussions and bargaining positions will not constitute binding offer and acceptance. Id. at 170-71 ("Additionally, the letters from defendant's attorney did not form a written agreement because a counteroffer only ripens into a valid contract if accepted prior to revocation.").

Plaintiffs' breach of contract and specific performance claims are properly dismissed because Plaintiffs fail to allege the existence of a valid contract. In the instant action, as in Morton, there existed an unsigned document, intended to act as the final contractual agreement of the parties. All discussions surrounding that document, specifically the 6/1, 3/17, and 4/13 Letters, merely constitute the parties' bargaining positions in contemplation of the final agreement. See e.g., Fletcher-Harlee v. Pote Concrete Contractors, Inc., 482 F.3d 247, 250 (3d Cir. 2007) (finding that a solicitation letter and a subsequent response laying out different terms for a potential business agreement did not constitute offer and acceptance, for the purposes of valid contract formation).

Thus, the crux of Plaintiffs' argument–that the Plaintiffs' 4/13 Letter and strikethrough marks simply "corrected" inaccuracies in the form contract, while simultaneously preserving the final agreement to reflect the parties' agreed-upon bargain–must fail. Plaintiffs made clear amendments to the substance of the contract, and noted such changes in the 4/13 Letter. Plaintiffs also requested that Defendant "review and advise" as to such changes. See Exhibit 10, attached to the Complaint. There are no allegations in the Complaint, nor is there any indication in any document, annexed to, or relied upon in the Complaint, that Defendant accepted Plaintiffs' changes, or in anyway executed or assented to the altered form contract. Moreover, neither Defendant's nor Plaintiffs' signature appears on the form contract.

Plaintiffs' attempts to distinguish Morton are unpersuasive. Morton presents a nearly identical factual setting to the instant action. The only difference is that, here, Plaintiffs, not the Defendant, executed changes to the proposed agreement; changes to which Defendant did not assent. Plaintiffs may not now use this litigation to force Defendant into accepting unacceptable terms. The breach of contract claim will be dismissed.

Plaintiffs' claim for specific performance similarly must fail. Specific performance may not stand as a claim, independent from a breach of contract claim. Instead, specific performance is an equitable remedy that may be granted by a court of equity in its discretion, if there is no adequate remedy at law. See Kroblin Refrigerated Xpress, Inc. v. Pitterich, 805 F.2d 96, 104 (3d Cir. 1986); see also First Nat. State Bank of New Jersey v. Commonwealth Fed. Sav. and Loan Ass'n of Norristown, 610 F.2d 164, 171 (3d Cir. 1971).

### IV.   PROMISSORY ESTOPPEL

Defendant has further moved to dismiss Plaintiffs' claim for promissory estoppel (Count III). Plaintiffs claim that in the Letters and in the 2/26 Resolution, Defendant promised to sell the Lots, "and to allow plaintiffs a period of due diligence and environmental testing with respect to those lots." Compl. ¶ 53. Plaintiffs also allege that the promises were made with the expectation on Defendant's part that Plaintiffs would rely upon them. Compl. ¶ 54.

The doctrine of promissory estoppel is comprised of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment. Toll Bros., Inc. v. Burlington County Bd. of Chosen Freeholders, 944 A.2d 1, 20 (N.J. 2008).

In the instant action, there are no allegations of any clear or definite promise. To the

contrary, according to the Complaint, the parties never entered into a formal contract for the sale of the Lots. Compl. ¶ 43. Instead, as mentioned above, all correspondence regarding the sale of the Lots merely constitute a transcript of the parties' bargaining process towards a final agreement. Such a final agreement was never reached by the parties. Thus, no clear and definite promise was made by Defendant, upon which Plaintiffs ought to have reasonably relied.

V. **EQUITABLE ESTOPPEL**

Defendant has also moved to dismiss Plaintiffs' claim for equitable estoppel (Count IV). Plaintiffs claim that in the Letters and in the 2/26 Resolution, Defendant represented the condition of the Lots "was adequate to permit [Plaintiffs] to conduct due diligence and environmental testing with respect to those lots." Compl. ¶ 59. Plaintiffs further allege that those "representations were made to [Plaintiffs] with the expectation on [Defendant's] part that [Plaintiffs] would rely upon them." Compl. ¶ 60.

"The essential elements of equitable estoppel are a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment." O'Malley v. Dep't of Energy, 537 A.2d 647, 651 (N.J. 1987). Plaintiffs allege that in various letters, defendant "represented that the condition of [the Lots] was adequate to permit [Plaintiffs] to conduct due diligence and environmental testing with respect to those lots ... These representations were made to [Plaintiffs] with the expectation on [Defendant's] part that [Plaintiffs] would rely upon them.

Plaintiffs misconstrue statements made during the bargaining process for clauses of an agreed-upon contract. While the Letters detail the Lots' condition and the potential rights of

10

Plaintiffs, the Letters do not bestow upon Plaintiffs any actual contract rights, or actionably warrant the condition of the Lots. A formal agreement between the parties may have contemplated such conditions. Such an agreement, as discussed earlier, was never reached. Plaintiffs' equitable estoppel claim must be dismissed.

## VI.  CONCLUSION

For the reasons stated above, Defendant's motion to dismiss the Complaint, pursuant to FED. R. CIV. P. 12(b)(6) and L. CIV. R. 7.1, is GRANTED.


Date: March 17, 2010

                                           S/Joseph A. Greenaway, Jr.
                                           JOSEPH A. GREENAWAY, JR., U.S.C.J.
                                           (Sitting by designation on the District Court)